# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

ALBERT MCLEOD, III,     CASE NO. 2:07-cv-1312
               JUDGE WATSON
    Petitioner,       MAGISTRATE JUDGE KEMP

v.

CARL ANDERSON, Warden,

   Respondent.
## ORDER and
## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's return of writ, petitioner's "Motion for Evidence," respondent's opposition, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**. Petitioner's "Motion for Evidence," Doc. No. 7, is **DENIED**.

## PROCEDURAL HISTORY

The Ohio Seventh District Court of Appeals summarized the facts and procedural history of this case as follows:

> On January 3, 2004, Albert McLeod approached a vehicle parked outside of the Safari Lounge, opened fire on the car, and shot Terrell Sayles in the leg. A trial was conducted on February 15, 2005 and the jury returned guilty verdicts on all counts. McLeod was then sentenced by the trial court to serve seven years for felonious assault, with a mandatory consecutive three years for the gun specification, to be served consecutively to a six month sentence for carrying a weapon under a disability.

\*\*\*

[T]here were three eyewitnesses that saw McLeod shoot the victim and two additional witnesses who placed McLeod directly in front of the car at which he was shooting but who ducked when they both saw and heard shots coming from the same location.

More specifically at trial, the victim Terrell Sayles took the stand and testified that he drove to the Safari Lounge on the night of the incident. He parked his car and walked across the street where he saw two females that he knew sitting in a truck. He jumped into the truck which was parked in front of the bar. He saw his cousin, Todd Dawson/Jackson arguing with a female in front of the bar. He got out of the truck and broke up the fight. He headed back to the truck and as he was getting in the vehicle he heard gunshots. He was hit by one of the bullets.

He testified that he heard the girls screaming "Albert." He then got out of the other side of the truck and took off running up between the gangway. The girls drove up around the corner and picked him up in the alley and then drove him to the hospital. They treated him briefly at Trinity Hospital and then was taken by ambulance to Pittsburgh. They were unable to remove the bullet from his leg.

Next, John Butler, the owner of the Safari Lounge took the stand. He testified that he kicked Todd Jackson out of the bar for underage drinking and that his daughter Leigheal was outside arguing with him. While he was outside with his daughter he saw McLeod running out of the alley way shooting a gun. He said that McLeod started following the truck and shooting the gun at the truck until the gun was emptied. He further testified that he was positive it was McLeod as he has known him for ten years and he did not see anyone else with a gun that night.

Next, Jessica Suriano testified that she was driving the Blazer that was shot at that night. Natasha Toney was in the car with her. Terrell hopped into the seat behind her. She testified that

she saw Todd and Leigheal arguing in front of the bar. Terrell got out of the car and pulled Todd away from the argument. Todd and Terrell got back into the car at which time Jessica saw McLeod standing at the front driver side of her car. She heard gunshots so she leaned down. Jessica admits though that she didn't actually see anyone fire shots. Terrell and Tony exited from the other side of the vehicle. She then started the car up and pulled away. She turned around the corner and headed down the alley where she picked up Terrell. She found out that he had been shot so she drove him to the hospital. Later, the police impounded her car and found bullets and blood in the door and across the back seat.

Next, Natasha Toney took the stand. She testified that she was riding in the passenger seat of Jessica's Blazer that evening. She gave testimony nearly identical to Jessica's.
Rolland Owens then testified that he lived with his grandparents across and down the street from the Safari Lounge. The night of the shooting he was in bed but got out of bed when he heard an argument. He saw two people arguing in front of the bar. He then saw Terrell go and take Todd away from the argument. However, he did not see Terrell get back into the car. He saw McLeod start walking towards the car and begin shooting. He could see the flashes coming from the gun as McLeod fired. Rolland then testified that he called his uncle, William Wade to tell him that Terrell had just been shot at by McLeod. The next morning Rolland went outside and found two spent shell casings. He gave them to his grandfather.

Leigheal Butler testified that she was John Butler's daughter and that she helped him out at the Safari Lounge. However, she doesn't work there anymore because somebody burned it down. On the night of the shooting, Leigheal testified that she asked Todd Jackson to leave the bar because he was underage. She sees McLeod and says "why don't you take your stepson home," in reference to Todd. She explained that McLeod had been dating Todd's mother. She then saw McLeod chase Terrell across the street, and after Terrell got in the car, McLeod began shooting.

*State v. McLeod,* 2006 WL 3849268 (Ohio App. 7th Dist. December 19, 2006). Petitioner

asserted the following assignments of error on direct appeal:

1. The jury erred to the prejudice of the Defendant-Appellant when it convicted him of two (2) counts of felonious assault and weapon under disability and the convictions are against the manifest weight of the evidence.

2. The trial court erred to the prejudice of the Defendant-Appellant when it failed to disqualify itself and overruled his motion for a mistrial after the court's relative, who was employed as a county prosecutor, had been present during the voir dire and accompanied the prosecutor on a jury view.

3. The trial court erred to the prejudice of the Defendant-Appellant when it failed to exclude the testimony of a witness who was placed on the witness list only three days prior to trial or in the alternative grant him a continuance to allow his counsel time to prepare for this new witness.

4. The trial court erred to the prejudice of the Defendant-Appellant when it did not allow counsel to properly impeach a witness.

5. The trial court erred to the prejudice of the Defendant-Appellant when it failed to grant his motion for new trial.

6. The trial court erred to the prejudice of the Defendant-Appellant when it allowed testimony of other acts with which the Defendant-Appellant was not charged, thus denying him due process of law.

7. The trial court erred to the prejudice of the Defendant-Appellant when it sentenced Defendant-Appellant to a definite sentence of seven (7) years imprisonment on one count of felonious assault, seven (7) years imprisonment on an additional count of felonious assault against the same victim, which were allied offenses of similar import, and a mandatory three (3) year gun specification all to be served consecutively to a six (6) month sentence for having weapons under disability, and failed to review all of the statutory factors announced in R.C. 2929.12.

*See id.* On December 12, 2006, the appellate court affirmed petitioner's convictions, vacated

his sentence, and remanded the case to the trial court for re-sentencing. *See id.* Petitioner

filed a timely appeal. He raised the following propositions of law:

> 1. When the State of Ohio deliberately files a witness list only days before a trial, in clear violation of Crim.R. 16, the only responsible course of action is for the trial court to continue the case and allow defense counsel ample time to fully investigate the matter in light of the fact that the State of Ohio had never previously indicated it would call the witnesses at trial, thus mandating a reversal of Defendant's conviction.
>
> 2. When the State of Ohio intentionally elicits testimony from a number of witnesses regarding other acts evidence and the prejudicial value of that testimony substantially outweighs the probative value, and the testimony describes actions which were not covered in the indictment and are highly inflammatory, irrelevant and prejudicial, the only reasonable course of action for the trial court is to prohibit such evidence.

*Exhibit 13 to Return of Writ.* On May 16, 2007, the Ohio Supreme Court dismissed

petitioner's appeal. *State v. McLeod,* 113 Ohio St.3d 1513 (2007).

> The trial court conducted resentencing on February 21, 2007. The court sentenced McLeod to the same terms of imprisonment as it had before for a total sentence of ten and one-half years. This subsequent, delayed appeal followed.
>
> On June 29, 2007, McLeod's appointed appellate counsel filed what is essentially a no merit or *Toney* brief pursuant to *State v. Toney* (1970), 23 Ohio App.2d 203, 52 O.O.2d 304, 262 N.E.2d 419. Counsel stated that the trial court "correctly interpreted and enforced" the sentencing requirements of *Foster* and that McLeod's sentence was "correct and fair." McLeod was given the opportunity to file his own appellate brief and did so on November 16, 2007, setting forth five assignments of error,

5

each challenging his conviction. McLeod followed that up with a supplemental merit brief on November 29, 2007, setting forth an additional two assignments of error, this time challenging his sentence and alleging ineffective assistance of counsel at his resentencing.

In his November 16, 2007 appellate brief, McLeod's five assignments of error state, respectively:

"THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT APPELLANT WHEN IT ALLOWED PROSECUTORIAL MISCONDUCT LETTING MCLEOD III PREVIOUS RECORD OUT IN COURT TO THE JURY DENYING ME DUE PROCESS OF LAW."

"THE JURY ERRED TO THE PREJUDICE OF THE DEFENDANT APPELLANT WHEN IT CONVICTED MCLEOD OF HAVING A GUN AND WEAPON UNDER DISABILITY WHEN THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

"INEFFECTIVE ASSISTANCE OF COUNCIL DO [sic] TO A CONFLICT OF INTEREST AND CUMULATIVE ERROR."

"THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT APPELLANT WHEN IT ALLOWED BAD ACTS OF EVIDENCE."

"THE COURTS ERRED WHEN THEY DIDN'T ALLOW ME TO PUT ONE OF MY WITNESSES ON THE STAND BY NOT BRINGING TODD JACKSON TO COURT TO TESTIFY."

***

In his November 29, 2007 supplemental appellate brief, McCleod raises two additional assignments of error. The first assignment of error states:

"THE TRIAL COURT ERRED WHEN IT RETROACTIVELY APPLIED A REVISED SENTENCING STATUTE TO EVENTS OCCURRING BEFORE THE REVISION, TO THE

DISADVANTAGE OF A DEFENDANT-APPELLANT. THE RESULTING SENTENCE DENIED DEFENDANT-APPELLANT DUE PROCESS OF LAW, AND VIOLATES THE EX POST FACTO DOCTRINE. FOURTEENTH AMENDMENT, ARTICLE I, SECTION X, UNITED STATES CONSTITUTION."

*State v. McLeod*, 2008 WL 2633292 (Ohio App. 7th Dist. July 1, 2008). On July 1, 2008, the appellate court dismissed petitioner's appeal. *Id.* It does not appear from the record that petitioner ever filed an appeal to the Ohio Supreme Court;[1] however, petitioner does not raise in these proceedings any claim regarding his re-sentencing.

On March 6, 2008, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. 2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

1. Crim.R. 16 – Witness list.

I. I was denied my right to [] fully examine the evidence against me, as announced by the court, the United States Supreme Court, the United States Constitution, and the Ohio State Constitution.

II. My right ensure [sic] that an individual will be guaranteed due process of law and that the individual will be guaranteed the right to fully confront witnesses during a trial before his peers.

III. My trial should have been delay[ed] so my lawyer could have question[ed] the witness[es] because the State never gave notice he would be testify[ing] at trial.

IV. The State was ask[ed] two times who would be testify[ing]

---

[1] At the time respondent filed the Return of Writ, the appellate court had not yet issued a decision on petitioner's appeal.

and the State never gave my lawyer the witness name or statement, the State hid this witness from me.

2. Rules of Evidence – "other acts" evidence.

I.  The State of Ohio intentionally elicits testimony from a number of witnesses regarding other acts evidence.

II.  Evidence regarding actions which were not covered in the indictment.

III.  Evidence that was submitted to the court, but was not relevant to the present case.

IV.  There was also an extensive discussion at side bar over my past actions, but the court decided to allow the testimony.

V.  I never testif[ied] at trial and the court put other evidence into the jury['s] min[d]s.

VI.  Evidence was irrelevant and not admissible.

It is the position of the respondent that petitioner failed to present claim one as a federal issue to the state courts and thereby has waived the right to present such claim in these proceedings.  Additionally, respondent contends that petitioner's claims are without merit.

## DISCOVERY REQUEST

On May 19, 2008, petitioner filed a "Motion for Evidence" in which he requests the Court to direct respondent to produce certain documents.  Specifically, petitioner seeks a copy of the grand jury transcript, the preliminary hearing transcript, pretrial transcripts, a transcript of the phone call made by John Butler to police and of the call made by the bar to police, and a police report made by Detective Division regarding statements of Alphie Wade Sr.  According to petitioner, the foregoing documents will establish that he is entitled

to federal habeas corpus relief. *See Motion for Evidence.*

However, the discovery processes contained in the Federal Rules of Civil Procedure do not automatically apply to habeas corpus actions. "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley,* 520 U.S. 899, 904 (1997). In *Harris v. Nelson,* 394 U.S. 286, 295 (1969), the United States Supreme Court held that the "broad discovery provisions" of the Federal Rules of Civil Procedure did not apply in habeas corpus proceedings. Following *Harris,* the Rules Governing Section 2254 Cases In United States District Courts were promulgated in 1976. Specifically, Rule 6(a) provides-

> A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

Under this "good cause" standard, a district court should grant leave to conduct discovery in habeas corpus proceedings only "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are more fully developed, be able to demonstrate that he is ... entitled to relief....'" *Bracy,* 520 U.S. at 908-909 (quoting *Harris,* 394 U.S. at 300). *See also Stanford v. Parker,* 266 F.3d 442, 460 (6th Cir.2001).

> "The burden of demonstrating the materiality of the information requested is on the moving party." *Stanford,* 266 F.3d at 460. Rule 6 does not "sanction fishing expeditions based on a petitioner's conclusory allegations." *Rector v. Johnson,* 120 F.3d 551, 562 (5th Cir.1997); *see also Stanford,* 266 F.3d at 460. "Conclusory allegations are not enough to warrant discovery under [Rule 6]; the petitioner must set forth specific allegations

of fact ." *Ward v. Whitley,* 21 F.3d 1355, 1367 (5th Cir.1994).

*Williams v. Bagley,* 380 F.3d 932, 975 (6th Cir.2004). The record fails to reflect that petitioner can meet this standard.

The documents petitioner seeks were available to him as a part of the pretrial discovery process. Further, none of these documents are needed to resolve the claims he raises in the instant proceedings. Petitioner's habeas corpus claims may be resolved from the trial transcript and record already before this Court. Petitioner's request for discovery is therefore **DENIED**.

## CLAIM ONE

In claim one, petitioner asserts that he was denied his right to confront witnesses and that the trial court improperly refused to grant his request for a continuance where the prosecution failed to timely disclose its intention to call Rolland Owens as a prosecution witness at trial. Petitioner failed fairly to present a claim regarding the alleged violation of the Confrontation Clause to the state courts.

In order to exhaust available state remedies, a petitioner must first fairly present the substance of his federal habeas corpus claims to the state courts. *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Anderson v.Harless,* 459 U.S. 4, 6 (1982). "The state courts must be provided with a fair opportunity to apply controlling legal principles to the facts bearing upon petitioner's constitutional claims." *Sampson v. Love,* 782 F.2d 53, 55 (6th Cir. 1986). Petitioner does not fairly present his claim simply because the necessary facts supporting a federal constitutional claim are present or because the constitutional claim appears self

evident. *Haggins v. Warden*, 715 F.2d 1050, 1054 (6th Cir. 1983)(citing *Harless*, 459 U.S. at 6). Furthermore, "[a] petitioner 'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions employing constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns." *Levine v. Torvik,* 986 F.2d 1506, 1515 (6th Cir. 1993)(citing *Franklin v. Rose*, 811 F.2s 322, 326 (6th Cir. 1987)). Courts normally require more than a single broad generalization that petitioner was denied a "fair trial" or "due process of law." *Franklin*, 811 F.2d at 326; *Petrucelli v. Coombe*, 735 F.2d 684, 688 (6th Cir. 1984). Petitioner, however, need not "cite book and verse on the federal constitution." *Picard,* 404 U.S. at 277 (quoting *Daugharty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1960)). The Sixth Circuit has strictly followed the requirement that petitioner fairly presented his federal constitutional claims to the state courts as a precondition to federal habeas review. *Weaver v. Foltz*, 888 F.2d 1097, 1098 (6th Cir. 1989).

Petitioner now contends that he was denied his federal constitutional right to confront witnesses against him by the trial court's refusal to grant a continuance; however, petitioner failed to present this federal issue to the state courts. Instead, on direct appeal, he argued solely that he was denied due process because the trial court failed to exclude the testimony of an untimely disclosed prosecution witness or alternatively grant him a continuance. *See Exhibit 10 to Return of Writ.* He argued that the prosecution had violated state discovery rules, *i.e.*, Ohio Criminal Rule 16, and that the trial court had abused its discretion in failing to grant a continuance. *See id.* He failed to refer to any cases supporting his claim that he had been denied the federal constitutional right of

confrontation. *See id.* The state appellate court likewise addressed petitioner's claim in the

context of state law only:

> McLeod's third assignment of error states:
>
> "The trial court erred to the prejudice of the Defendant-Appellant when it failed to exclude the testimony of a witness who was placed on the witness list only three days prior to trial or in the alternative grant him a continuance to allow his counsel time to prepare for this new witness."
>
> McLeod challenges the trial court's decision to allow testimony from Rolland Owens despite the fact his name was not put on a witness list until four days prior to trial.
>
> Crim.R. 16(B)(1)(e) requires the prosecutor to "furnish to the defendant a written list of the names and addresses of all witnesses whom the prosecuting attorney intends to call at trial." The duty to disclose information is a continuing one, so that a party must notify the other party as new discoverable information is gained. See Crim.R. 16(D).
>
> If the state fails to promptly provide the identity of a witness as required by Crim.R. 16, the trial court does not abuse its discretion by permitting the witness to testify if it can be shown that: (1) the state's failure to provide discovery was not willful, (2) foreknowledge of the statement would not have benefited the defendant in preparation of his defense, and (3) the defendant was not prejudiced by the admission of the evidence. *State v. Czajka* (1995), 101 Ohio App.3d 564, 572. Where the failure to disclose a witness is not willful, the trial court has numerous means to cure such a deficiency in discovery. See *State v. Wamsley* (1991), 71 Ohio App.3d 607, 610. One remedy available to the trial court is giving defense counsel the opportunity to interview the witness prior to the witness testifying. *State v. Heinish* (1990), 50 Ohio St.3d 231, 236.

Here, it seems clear that there was no willful withholding of discovery as the identity of the witness, Rolland Owens, and his potential testimony was handed over to the defense in the form of a police report provided to the defense on August 27, 2004, nearly six months before trial. The police report made by Det. Stasiulewicz stated:

"Today Alfie Wade Sr. came to the office with physical two spent 380 casings found by his grandson Roland Owens who was staying with his grandmother Ms. Wilson on North 8th Street the night of the shooting. Mr. Wade told me that Roland saw the shooting, and the argument. The next day Roland was looking around for shell casings and located two spent shells down on the street. These items were tagged and placed in the evidence room."

Although Roland Owens was not put on an official witness list until four days before trial, the defense cannot claim that they were completely surprised by this witness in light of the police report. As the State points out in its brief, there was nothing preventing defense counsel from either contacting this witness or questioning the prosecution about his grandfather's statement made to the police.

Even if this is viewed as a deficiency in discovery, the trial court attempted to cure it by giving defense counsel an opportunity to interview Rolland and prepare for as long as was necessary prior to him testifying. Notably, defense counsel took advantage of this opportunity and returned to the courtroom when he was ready to proceed.

Because it appears that the State did not intend to willfully surprise McLeod since defense counsel was in fact aware of the existence of this eyewitness and his potential testimony, and because the trial court attempted to cure any prejudice caused by this witness testifying, the trial court did not abuse its discretion by allowing Roland to testify.

*State v. McLeod, supra*, 2006 WL 3849268. Further, petitioner has failed to establish cause

for his failure to present his federal constitutional claim to the state appellate court. Petitioner therefore has waived his right to present his Confrontation Clause claim in these federal habeas corpus proceedings.

To the extent that petitioner alleges a violation of state law or state discovery rules, this claim fails to warrant federal habeas corpus relief. A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Smith v. Sowders,* 848 F.2d 735, 738 (6th Cir.1988). A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure. *Allen v. Morris,* 845 F.2d 610, 614 (6th Cir.1988). " '[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure' " in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright,* 758 F.2d 1431, 1433 (11th Cir.1985)). Only where the error resulted in the denial of fundamental fairness will habeas relief be granted. *Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir.1988). Such are not the circumstances here.

Respondent contends that petitioner also has waived his claim of denial of due process for federal habeas corpus review. Assuming, however, that such claim is properly before this Court, this claim plainly lacks merit.

> [T]he [Supreme] Court has noted that the grant or denial of a
> motion for a continuance is within the sound discretion of the

trial judge, and will be reviewed only for an abuse of that discretion. See *Avery v. Alabama*, 308 U.S. 444, 446, 60 S.Ct. 321, 84 L.Ed. 377 (1940). The Court has also explained that "[i]t would take an extreme case to make the action of the trial court in such a case a denial of due process of law." *Franklin v. South Carolina*, 218 U.S. 161, 168, 30 S.Ct. 640, 54 L.Ed. 980 (1910). Thus, as the Sixth Circuit has explained:

\*\*\*

Importantly, denial of a continuance amounts to a due process violation warranting habeas relief only where the petitioner shows that he was prejudiced by the omission of the evidence he would have procured had the continuance been granted. *See Mackey v. Dutton,* 217 F.3d 399, 408 (6th Cir.2000); *cf. United States v. Allen,* 247 F.3d 741, 771 (8th Cir.2001) (applying same standard in case on direct review); *United States v. Hall,* 200 F.3d 962, 964 (6th Cir.2000) (same).

*Coy v. Renico,* 414 F.Supp.2d 744, 774-75 (E.D. Mich. February 15, 2006). Such are not the circumstances here.

As discussed by the state appellate court, the prosecutor provided Rolland Owens' name to the defense as a potential prosecution witness four days prior to trial. Additionally, the prosecutor had disclosed Owens' identity as a potential witness who had witnessed the shooting and the argument in a police report provided to defense six months prior to trial. *Transcript,* at 6-7. Additionally, the trial court provided defense counsel with time to interview Owens prior to trial. Therefore, petitioner has failed to establish prejudice from the trial court's ruling. *Id.,* at 213-214.

Claim one is without merit.

# CLAIM TWO

In claim two, petitioner asserts that he was denied a fair trial due to improper admission of other acts evidence neither charged in the indictment against him, nor relevant to the charges. The state appellate court rejected this claim as follows:

McLeod's sixth assignment of error argues:

"The trial court erred to the prejudice of the Defendant-Appellant when it allowed testimony of other acts with which the Defendant-Appellant was not charged, thus denying him due process of law."

McLeod claims he was prejudiced by the admission of irrelevant and prejudicial testimony regarding prior actions not contained in the indictment. More specifically, McLeod objects to the following testimony which was admitted by the trial court.

At trial, Leigheal Butler testified that she witnessed McLeod threatening to kill her dad for being a snitch. Rolland Owens testified that he did not come to court voluntarily because his mom was afraid that something might happen to him or his grandparents' house. Terrell Sayles testified that he and McLeod used to be friends but that they got into a fight when McLeod accused him of stealing money from him. The verbal dispute leaded to two physical altercations on the same night resulting in Terrell having a chipped tooth. Terrell further testified that he was friends with Jessica Suriano, a girl who had dated McLeod. Jessica told Terrell that McLeod thought that she was cheating on him with Terrell.

Likewise, John Butler testified that he previously had to kick McLeod out of his bar after he attacked Terrell Sayles. He stated that he didn't tell the police everything about that incident because he was threatened by McLeod's family. In the present case, he likewise did not want to testify before the

Grand Jury because he was threatened by both McLeod and McLeod's father for being a snitch. He further claimed that he did not come to testify voluntarily because McLeod was bragging about burning his bar down. Allegedly, McLeod also threatened to burn down Butler's home. He reported these threats to the Steubenville police.

Evidence of prior bad acts is governed by Evid.R. 404(B) which states:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." See, also, *State v. Lowe* (1994), 69 Ohio St.3d 527, 530, citing *State v. Broom* (1988), 40 Ohio St.3d 277, 282-83. Evidence of other crimes may be presented when "they are so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged. *State v. Wilkinson* (1980), 64 Ohio St.2d 308, 415 N.E.2d 261. If the other admissible evidence, standing alone, constitutes overwhelming proof of guilt, the error is harmless. *State v. Zuern* (1987), 32 Ohio St.3d 56, 60-61; *State v. Williams* (1983), 6 Ohio St.3d 281, paragraph six of the syllabus.

The testimony regarding the fighting and accusations of cheating would tend to prove intent or motive for shooting Terrell. Therefore, this testimony clearly would be admissible. With regard to the testimony regarding the threats, intimidation, and alleged arson, the Ohio Supreme Court has said that evidence of threats or intimidation of witnesses reflects a consciousness of guilt similar to evidence of flight to avoid prosecution, or efforts made to cover up a crime or intimidate witnesses and is admissible as admission by conduct. *State v. Richey* (1992), 64 Ohio St.3d 353, 357. See also *State v. Group,* 98 Ohio St.3d 248, 2002 -Ohio7247. Hence, intimidation of a witness is not "wholly independent" of the

> charged offenses. *State v. Soke* (1995) 105 Ohio App.3d 226, 250. See also *State v. Leonard* (May 21, 1993), 4th Dist. No. CA92-12, *State v. Reese* (Jan. 7, 1988), 8th Dist. Nos. 53115 and 53116, at 22-23. Accordingly, this type of evidence would be admissible at trial. Therefore, this assignment of error is also meritless.

*State v. McLeod, supra.*

Petitioner's federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See *Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir.1997). Under 28 U.S.C. § 2254(e)(1), the state court's factual findings are entitled to a presumption of correctness:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

*Id.* Additionally, the state court's decision is binding on this Court unless that decision is contrary to or involves an unreasonable application of clearly established federal law as determined by the United States Supreme Court:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as

determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). Petitioner has failed to meet this standard here.

Federal habeas review of state court evidentiary rulings is extremely limited. *Waters v. Kassulke,* 916 F.2d 329, 335 (6th Cir.1990). Evidentiary questions generally do not rise to a constitutional level unless the error was so prejudicial as to deprive a defendant of a fundamentally fair trial, thereby violating due process. *Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir.1988); *see also Walker v. Engle,* 703 F.2d 959, 962 (6th Cir.1983). When such errors are alleged, the federal court's inquiry in reviewing these claims is directed to whether the evidence was rationally connected to the crime charged. *Carter v. Jago,* 637 F.2d 449, 457 (6th Cir.1980). The record in this case simply fails to reflect that admission of the complained

of evidence deprived petitioner of a constitutionally fair trial.

> The government cannot ... in its case-in-chief, introduce evidence of Appellant's unsavory character merely to show that he is a bad person and thus more likely to have committed the crime.

*United States v. Roark,* 924 F.2d 1426, 1434 (8th Cir.1991). However, for the reasons detailed by the state appellate court, the testimony complained of was relevant to establish petitioner's intent and motive to commit the crime, as well as his guilt of the offenses charged. Further,

> [b]oth the Supreme Court and the Sixth Circuit have repeatedly held that a defendant is not denied a fair trial by the admission of prior bad acts evidence which is relevant in the defendant's trial. *See Estelle,* 502 U.S. at 69-70; *Dowling v. United States,* 493 U.S. 342, 353-54, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990); *Coleman v. Mitchell,* 268 F.3d 417, 439-40 (6th Cir.2001); *Pennington v. Lazaroff,* 13 Fed. Appx. 228, 232 (6th Cir.2001) (per curiam) (unpublished); *Manning v. Rose,* 507 F.2d 889, 893-95 (6th Cir.1974).

*Norris v. Davis,* unreported, 2006 WL 1581410 (E.D. Michigan May 3, 2006). Moreover,

> [t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence. In *Estelle v. McGuire,* the Supreme Court declined to hold that the admission of prior injury evidence violated due process, thus warranting habeas relief. 502 U.S. 62, 75, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n. 5, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385. Moreover, in *Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), the Supreme Court rejected the argument that the Due Process Clause requires the exclusion

of prejudicial evidence, even though limiting instructions were given and a valid state purpose is served. *Id.* at 563-64, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606. The Court recognized that it was not "a rule-making organ for the promulgation of state rules of criminal procedure. And none of the specific provisions of the Constitution ordains this Court with such authority." *Id.* at 564, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997); *Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), it has not explicitly addressed the issue in constitutional terms. Accordingly, the district court correctly found that there is no Supreme Court precedent that the trial court's decision could be deemed "contrary to," under AEDPA.

*Bugh v. Mitchell,* 329 F.3d 469, 512-13 (6th Cir.2003).

Claim two is without merit.

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.** Petitioner's "Motion for Evidence," Doc. No. 7, is **DENIED**.

If any party objects to this *Report and Recommendation,* that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge